Skip to Main Content  Logout  My Account  Search Menu  New Civil Search  Refine Search  Back                    Location : Fort Bend   Images  Help

# REGISTER OF ACTIONS
## CASE No. 17-DCV-244634

| | |
|---|---|
| Rachel Adams V. Metropolitan Lloyds Insurance Company of Texas and Brandon Kaker    § § § § § | Case Type: **Contract - Other Contract**<br>Date Filed: **08/31/2017**<br>Location: **400th District Court** |

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| Defendant or Respondent | Kaker, Brandon<br>Keller, TX 76248 | |
| Defendant or Respondent | Metropolitan Lloyds Insurance Company of Texas<br>Dallas, TX 75201 | Dennis D Conder<br>*Retained*<br>214-748-5000(W) |
| Plaintiff or Petitioner | Adams, Rachel | Jacob Scott "Jake" Rogiers<br>*Retained*<br>210-490-7402(W)<br><br>Robert A. Pollom<br>*Retained*<br>210-490-7402(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 08/31/2017 | Docket Sheet<br>*Docket Sheet* |
| 08/31/2017 | Petition      Doc ID# 1<br>*Plaintiff's Original Petition* |
| 08/31/2017 | Case Information Sheet<br>*Civil Case Information Sheet* |
| 09/05/2017 | Jury Fee Paid |
| 09/06/2017 | Issuance      Doc ID# 2<br>*Citation Issued to Metropolitan Lloyds Insurance Company of Texas* |
| 09/06/2017 | Citation<br>eService |

| | | | |
|---|---|---|---|
| | Metropolitan Lloyds Insurance Company of Texas | Served | 10/13/2017 |
| | | Returned | 10/19/2017 |

| | |
|---|---|
| 09/06/2017 | Issuance      Doc ID# 3<br>*Citation Issued to Brandon Kaker* |
| 09/06/2017 | Citation<br>eService |

| | | |
|---|---|---|
| | Kaker, Brandon | Unserved |

| | |
|---|---|
| 10/19/2017 | Officers Return      Doc ID# 4<br>*Citation Issued to Metropolitan Lloyds Insurance Company of Texas on 09/06/2017* |
| 10/24/2017 | Answer/Contest/Response/Waiver      Doc ID# 5<br>*Defendant Metropolitan Lloyds Insurance Company of Texas' Original Answer* |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Defendant or Respondent Metropolitan Lloyds Insurance Company of Texas**<br>Total Financial Assessment<br>Total Payments and Credits<br>**Balance Due as of 11/08/2017** | | 2.00<br>2.00<br>**0.00** |
| 10/24/2017 | Transaction Assessment | | 2.00 |
| 10/24/2017 | E-filing      Receipt # 2017-64788-DCLK | Metropolitan Lloyds Insurance Company of Texas | (2.00) |

| | | | |
|---|---|---|---|
| | **Plaintiff or Petitioner Adams, Rachel**<br>Total Financial Assessment<br>Total Payments and Credits<br>**Balance Due as of 11/08/2017** | | 352.00<br>352.00<br>**0.00** |
| 09/05/2017 | Transaction Assessment | | 350.00 |
| 09/05/2017 | E-filing      Receipt # 2017-54088-DCLK | Adams, Rachel | (350.00) |
| 10/16/2017 | Transaction Assessment | | 5.00 |

EXHIBIT
A

| 10/20/2017 | Transaction Assessment | | | 2.00 |
| 10/20/2017 | E-filing | Receipt # 2017-63793-DCLK | Adams, Rachel | (2.00) |

Filed
8/31/2017 12:45 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Shelby Taylor

CAUSE NO. **17-DCV-244634**

| | | |
|---|---|---|
| RACHEL ADAMS | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | Fort Bend County - 400th Judicial District Court |
| V. | § | _____ JUDICIAL DISTRICT |
| | § | |
| | § | |
| METROPOLITAN LLOYDS | § | |
| INSURANCE COMPANY OF TEXAS | § | |
| AND BRANDON KAKER | § | FORT BEND COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff RACHEL ADAMS, files this Original Petition against METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS ("METROPOLITAN" or the "INSURANCE DEFENDANT"), and BRANDON KAKER ("KAKER" or "ADJUSTER DEFENDANT" or herein collectively as "DEFENDANTS") and in support thereof, would show as follows:

### I.
### DISCOVERY CONTROL PLAN LEVEL

Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff will ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

### II.
### PARTIES AND SERVICE

Plaintiff resides in Fort Bend County, Texas.

Defendant METROPOLITAN LLOYDS is in the business of insurance in the State of Texas. The insurance business done by INSURANCE DEFENDANT in Texas includes, but is not limited to, the following:

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

This defendant may be served with personal process, by a process server, by serving its registered agent CT Corporation System, 1999 Bryan Street Suite 900, Dallas, Texas 75201 or wherever else it may be found.

Defendant, Brandon Kaker, is an individual residing in and domiciled in the State of Texas. This defendant may be served with personal process via personal service at, 245 Bear Hollow, Keller, Texas 76248 or wherever else he may be found.

### III.
### JURISDICTION AND VENUE

Venue is appropriate in Fort Bend County, Texas because all or part of the conduct giving rise to the causes of action were committed in Fort Bend County, Texas and the Plaintiff and property which is the subject of this suit are located in Fort Bend County, Texas.

Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

### IV.
### FACTS

Plaintiff is the owner of a Texas Homeowner's Insurance Policy (hereinafter referred to as "the Policy"), which was issued by INSURANCE DEFENDANT.

Plaintiff owns the insured property, which is specifically located at, 3510 La Costa Road, Missouri City, Texas 77459 (hereinafter referred to as "the Property").

2

INSURANCE DEFENDANT sold the Policy insuring the Property to Plaintiff.

During the terms of said Policy, on or about May 29, 2016 under Policy No. 7690351150 and Claim No. JDG37309, Plaintiff sustained covered losses in the form of wind and/or hail damage and damages resulting therefrom, and Plaintiff timely reported same pursuant to the terms of the Policy. Plaintiff asked that INSURANCE DEFENDANT cover the cost of repairs to the Property pursuant to the Policy. However, DEFENDANTS failed to conduct a full, fair and adequate investigation of Plaintiff's covered damages, which is evidenced by the estimate and report completed by Brandon Kaker and fully adopted by Metropolitan Lloyds Insurance Company of Texas.[1]

As detailed in the paragraphs below, INSURANCE DEFENDANT wrongfully denied Plaintiff's claim for repairs to the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, INSURANCE DEFENDANT failed to pay Plaintiff's claim by not providing full coverage for the damages sustained by Plaintiff.

To date, INSURANCE DEFENDANT continues to delay in the payment for the damages to the Property, which originated in Adjuster Defendant's failure to effectuate a prompt, fair, and equitable resolution of the claim. Insurance Defendant delay in resolving the claim has caused further damage, which is of an unknown amount, to the property by denying Plaintiff the ability to make proper repairs prior to Tropical Storm Harvey.

INSURANCE DEFENDANT failed to perform its contractual duty to adequately compensate Plaintiff under the terms of their Policy. Specifically, INSURANCE DEFENDANT refused to pay the full proceeds of the Policy after its agent, ADJUSTER DEFENDANT conducted an outcome-oriented investigation, although due demand was made for

---

[1] *See Plaintiff's Exhibit A*, a true and correct copy of Brandon Kaker's estimate dated November 7, 2016.

proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery under the Policy have been carried out and accomplished by Plaintiff. INSURANCE DEFENDANT'S conduct constitutes a breach of the insurance contract between it and Plaintiff.

Pleading further, DEFENDANTS misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. For example, Adjuster Defendant arbitrarily labeled known damage from the occurrence as old damage although no scientific testing was completed to reach this conclusion.[2] TEX. INS. CODE §541.060(a)(1).

DEFENDANTS failed to make an attempt to settle Plaintiff's claim in a fair manner, although it was aware of its liability to Plaintiff under the Policy. Its conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A).

INSURANCE DEFENDANT failed to explain to Plaintiff any valid reason for its coverage denial and offer of an inadequate settlement. Specifically, it failed to offer Plaintiff full compensation, without any valid explanation why full payment was not being made. Furthermore, INSURANCE DEFENDANT did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for the failure to adequately settle Plaintiff's claim. INSURANCE DEFENDANT conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3).

INSURANCE DEFENDANT failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim, beginning an investigation of Plaintiff's

---

[2] Id.

4

claim, and requesting all information reasonably necessary to investigate Plaintiff's claim within the statutorily mandated time of receiving notice of Plaintiff's claim. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

Further, INSURANCE DEFENDANT failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

INSURANCE DEFENDANT failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, it has delayed full payment of Plaintiff's claim and, to date, Plaintiff has not received full payment for the claim. Its conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

From and after the time Plaintiff's claim was presented to INSURANCE DEFENDANT, its liability to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, it has refused to pay Plaintiff in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny the full payment.

INSURANCE DEFENDANT'S conduct constitutes a breach of the common law duty of good faith and fair dealing.

Additionally, INSURANCE DEFENDANT knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.

Because of INSURANCE DEFENDANT'S wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who is representing Plaintiff with respect to these causes of action.

### V.
### CAUSES OF ACTION AGAINST INSURANCE DEFENDANT

**A.    BREACH OF CONTRACT**

INSURANCE DEFENDANT'S conduct constitutes a breach of the insurance contract between it and Plaintiff. Defendant's failure and/or refusal, as described above, to pay Plaintiff adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of the insurance contract with Plaintiff.

**B.    NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**

**1.    UNFAIR SETTLEMENT PRACTICES**

INSURANCE DEFENDANT'S conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices: TX. INS. CODE §541.060(a). All violations under this article are made actionable by TEX. INS. CODE §541.151.

INSURANCE DEFENDANT'S unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

INSURANCE DEFENDANT'S unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though its liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS.

CODE §541.060(a)(2)(A).

INSURANCE DEFENDANT'S unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

### 2.     THE PROMPT PAYMENT OF CLAIMS

INSURANCE DEFENDANT'S conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

INSURANCE DEFENDANT'S failure to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

INSURANCE DEFENDANT'S failure to notify Plaintiff in writing of its acceptance or rejection of the claim within the applicable time constraints constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

INSURANCE DEFENDANT'S delay of the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

## C.   BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

INSURANCE DEFENDANT'S conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds pursuant to insurance contracts.

INSURANCE DEFENDANT'S failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## VI.
## CAUSES OF ACTION AGAINST ADJUSTER DEFENDANT

## A.   NONCOMPLIANCE WITH TEXAS INSURANCE CODE

Plaintiff re-alleges the foregoing paragraphs.   At all pertinent times, KAKER, the ADJUSTER DEFENDANT, was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of the ADJUSTER DEFENDANT and his agents constitute one or more violations of the Texas Insurance Code. More specifically, the ADJUSTER DEFENDANT has, among other violations, violated the following provisions of the Code:

1.   Insurance Code § 542.003(b)(5) and 28 TAC 21.203(5).

2.   Insurance Code chapter 541, section 541.060 by, among other things:

- misrepresenting one or more material facts and/or policy provisions relating to coverage;

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim under one portion of a policy with respect to which liability has become reasonably clear in order to influence Plaintiff to settle the claim with respect to another portion of the policy;

- failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims;

- refusing to affirm or deny coverage within a reasonable time;

- refusing to conduct a reasonable investigation;

- ignoring damage known to be covered by the Policy; and/or

- conducting an outcome-oriented investigation in order to provide INSURANCE DEFENDANT with a basis to underpay the claim.

The foregoing paragraphs are incorporated herein. The INSURANCE DEFENDANT assigned the loss and the claim to    who was at all pertinent times the agent of the INSURANCE DEFENDANT, through both actual and apparent authority. The acts, representations and omissions of the ADJUSTER DEFENDANT are attributed to the INSURANCE DEFENDANT.

ADJUSTER DEFENDANT inspected Plaintiff's property on or about November 3, 2016. During the inspection, ADJUSTER DEFENDANT was tasked with the responsibility of conducting a thorough and reasonable investigation of Plaintiff's claim, including determining the cause of and then quantifying all of the damage done to Plaintiff's property. During the inspection, ADJUSTER DEFENDANT ignored covered damages to the Property and refused to address all of the damages caused by the loss. Specifically, KAKER, ignored covered damages including but not limited to the main house roof, patio metal roof, exterior, soffit, fascia, dining room, living room, upper hallway, and garage.[3] Subsequent to the inspection, ADJUSTER DEFENDANT prepared a repair estimate, completed on or about November 7, 2016, which vastly under-scoped the actual covered damages to the property, thus demonstrating ADJUSTER DEFENDANT did not conduct a thorough investigation of the claim.[4]

Despite having been assigned the claim, and despite being given authority and instructions to inspect, adjust and evaluate the claim, the ADJUSTER DEFENDANT failed and refused to

---

[3] Id.
[4] Id.

properly adjust the claim. The ADJUSTER DEFENDANT failed to properly inspect the property and the damages, failed to request information, failed to adequately investigate the claim, failed to respond to requests for information from the Plaintiff, failed to timely evaluate the claim, failed to timely and properly estimate the claim, and failed to timely and properly report to the INSURANCE DEFENDANT and make recommendations to the INSURANCE DEFENDANT to address all the covered damages.

The Plaintiff provided information regarding the loss and the claim to the ADJUSTER DEFENDANT. The Plaintiff allowed the ADJUSTER DEFENDANT full and complete access to the property. The Plaintiff provided sufficient information to the ADJUSTER DEFENDANT to adjust and evaluate the loss. The Plaintiff made inquiries regarding the status of the loss and payment, but the ADJUSTER DEFENDANT failed and refused to respond to the inquiries and failed to properly adjust the claim and the loss. As a result of the ADJUSTER DEFENDANT'S inadequate and outcome-oriented investigation, to date, Plaintiff has not received full payment for the claim.

The ADJUSTER DEFENDANT'S actions were negligent, reckless, willful and intentional, and were the proximate and producing cause of damages to the Plaintiff.

Where statements were made by the ADJUSTER DEFENDANT, Plaintiff reasonably relied upon them. As a result of the foregoing conduct, which was and is the producing cause(s) of injury and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, and consequential damages. Moreover, one or more of the foregoing acts or omissions were "knowingly" made, entitling Plaintiff to seek treble damages pursuant to the Insurance Code.

## VII.
## KNOWLEDGE

Each of the acts described above, together and singularly, was done "knowingly" by DEFENDANTS as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiff's damages described herein.

## VIII.
## DAMAGES

Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff.

As previously mentioned, the damages caused by the covered losses have not been properly addressed or repaired in the months since the loss occurred, causing further damage to the Property, and causing undue hardship and burden to Plaintiff. These damages are a direct result of DEFENDANTS' mishandling of Plaintiff's claim in violation of the laws set forth above.

For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claim, together with attorney's fees.

For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## IX.

In addition, as to any exclusion, condition, or defense pled by DEFENDANTS, Plaintiff would show that:

The clear and unambiguous language of the policy provides coverage for damage caused by losses made the basis of Plaintiff's claim, including the cost of access to fix the damages;

In the alternative, any other construction of the language of the policy is void as against public policy;

Any other construction and its use by the DEFENDANTS violate the Texas Insurance Code section 541 et. seq. and is void as against public policy;

Any other construction violates Art. 17.50 of the Texas Business and Commerce Code and is unconscionable and is void as against public policy and was procured by fraudulent inducement;

Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

In the alternative, should the Court find any ambiguity in the policy, the rules of construction of such policies mandate the construction and interpretation urged by Plaintiff;

In the alternative, DEFENDANTS are judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring information.

## X.
## REQUEST FOR DISCLOSURES

Pursuant to the Texas Rules of Civil Procedure 194, Plaintiff requests that DEFENDANTS provide the information required in a Request for Disclosure.

## XI.
## FIRST REQUEST FOR PRODUCTION TO INSURANCE DEFENDANT

1) Produce the INSURANCE DEFENDANT's complete claim file (excluding all privileged portions) in your possession for Plaintiff's property relating to or arising out of any damages caused by the loss for which INSURANCE DEFENDANT opened a claim under the Policy. Please produce a privilege log for any portions withheld on a claim of privilege.

2) Produce all non-privileged emails and other forms of communication between INSURANCE DEFENDANT, its agents, adjusters, employees, or representatives and the adjuster, and/or their agents, adjusters, representatives or employees relating to, mentioning, concerning or evidencing the Plaintiff's property which is the subject of this suit.

3) Produce any complete claim file (excluding all privileged portions) in the INSURANCE DEFENDANT's possession for the Plaintiff/insured and/or for the Plaintiff's property as listed in the Plaintiff's Original Petition, relating to or arising out of any claim for damages which INSURANCE DEFENDANT opened a claim under any policy. Please produce a privilege log for any portions withheld on a claim of privilege.

## XII.
## FIRST REQUEST FOR PRODUCTION TO ADJUSTER DEFENDANT

1) Produce ADJUSTER DEFENDANT's complete claim or adjusting file for Plaintiff's property.  Please produce a privilege log for any portions withheld on a claim of privilege.

2) Produce all emails and other forms of communication between INSURANCE DEFENDANT, its agents, adjusters, employees, or representatives and the ADJUSTER DEFENDANT, and/or their agents, adjusters, representatives or employees relating to, mentioning, concerning or evidencing the Plaintiff's property which is the subject of this suit. This includes any correspondence or communications related to the Plaintiff's property, whether related to this claim or any other claim in the INSURANCE DEFENDANT'S possession.  Please produce a privilege log for any items withheld on a claim of privilege.

## XIII.

As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks monetary relief, the maximum of which is over $100,000 but not more than $200,000.  The amount of monetary relief actually awarded, however, will ultimately be determined by a jury. Plaintiff also seeks pre-judgment and post-judgment interest at the highest legal rate.

[CONTINUED ON NEXT PAGE]

## XIV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that DEFENDANTS be cited to appear and answer herein; that, on final hearing, Plaintiff have judgment against DEFENDANTS for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court; for costs of suit; for interest on the judgment; for pre-judgment interest; and, for such other and further relief, in law or in equity, either general or special, including the non-monetary relief of declaratory judgment against the INSURANCE DEFENDANT, to which Plaintiff may be justly entitled.

Respectfully submitted,

KETTERMAN ROWLAND & WESTLUND
16500 San Pedro, Suite 302
San Antonio, Texas 78232
Telephone:     (210) 490-7402
Facsimile:      (210) 490-8372

BY:   */s/Jake S. Rogiers*
Robert A. Pollom
State Bar No. 24041703
robert@krwlawyers.com
Jake S. Rogiers
State Bar No. 24069066
jake@krwlawyers.com

ATTORNEYS FOR PLAINTIFF

**PLAINTIFF REQUESTS A TRIAL BY JURY**

## MetLife Auto and Home

Homeowner Operational Field Office
P.O. Box 6040
Scranton, PA. 18505 - 6040

| | | | |
|---|---|---|---|
| Insured: | JASON  ADAMS, RACHEL N ADAMS | Home: | (281) 455-5128 |
| Property: | 3510 LA COSTA RD | | |
| | MISSOURI CITY, TX 77459 | | |
| Home: | 3510 LA COSTA RD | | |
| | MISSOURI CITY, TX 77459 | | |
| | | | |
| Claim Rep.: | Brandon Kaker | Business: | (800) 316-0330 |
| | | E-mail: | Irving@tailoredadjustment.com |
| | | | |
| Estimator: | Brandon Kaker | Business: | (800) 316-0330 |
| | | E-mail: | Irving@tailoredadjustment.com |

Claim Number: JDG37309.          Policy Number: 000000000000000          Type of Loss: Hail

| | | | |
|---|---|---|---|
| Date Contacted: | 11/1/2016 5:17 PM | | |
| Date of Loss: | 5/29/2016 | Date Received: | 11/1/2016 |
| Date Inspected: | 11/3/2016 10:00 AM | Date Entered: | 11/1/2016 5:30 PM |
| Date Est. Completed: | 11/7/2016 2:51 PM | | |

Price List:      TXHO8X_NOV16
                 Restoration/Service/Remodel
Estimate:        JASON__ADAMS__
                 RACHEL

MetLife Auto & Home is committed to helping you through the claim process and we will provide you with an exceptional customer experience. The following report has been developed to provide you with a detailed estimate for the damages to your property that are covered under your policy. The Xactimate software used to create this estimate applies the most up-to-date and reliable pricing information available for your area. We anticipate that you will review this estimate and encourage you to contact your adjuster with any further questions.

Please contact your MetLife adjuster immediately if your contractor's estimate exceeds the agreed values provided in this report or additional damages are identified.   Your failure to provide timely notification to MetLife may impact our ability to extend coverage for any supplemental expense.

Your perspective on our service delivery is very important to us and we value your feedback. Please do not hesitate to contact us with your ideas and recommendations that will help us to enhance future performance. Our claims professionals are grateful for the opportunity to serve you and wish you the best with the completion of the repairs. We know that you have a choice when selecting your insurance provider and "Thank You" for choosing MetLife Auto & Home.

*EXHIBIT A*

MetLife Auto and Home

Homeowner Operational Field Office
PO Box 6040
Scranton, PA, 18505 - 6040

JASON__ADAMS__RACHEL

Dwelling

Roof

### Roof

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. R&R Rain cap - 8" | 3.00 EA | 47.37 | 7.28 | 149.39 | (3.90) | 145.49 |
| 2. R&R Roof vent - turbine type | 2.00 EA | 107.22 | 9.49 | 223.93 | (5.96) | 217.97 |
| Total: Roof | | | 16.77 | 373.32 | 9.86 | 363.46 |



Metal Patio Roofing

732.88 Surface Area          7.33 Number of Squares
194.06 Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 3. R&R Aluminum corrugated sheet roofing - .019 | 732.88 SF | 5.13 | 86.46 | 3,846.14 | (47.08) | 3,799.06 |
| Totals: Metal Patio Roofing | | | 86.46 | 3,846.14 | 47.08 | 3,799.06 |
| Total: Roof | | | 103.23 | 4,219.46 | 56.94 | 4,162.52 |

Front Elevation

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| No evidence of any storm related damage. | | | | | | |
| Totals: Front Elevation | | | 0.00 | 0.00 | 0.00 | 0.00 |

Right Elevation

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| No evidence of any storm related damage. | | | | | | |
| Totals: Right Elevation | | | 0.00 | 0.00 | 0.00 | 0.00 |

**MetLife Auto and Home**

Homeowner Operational Field Office
PO Box 6040
Scranton, PA. 18505 - 6040

### Rear Elevation

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| No evidence of any storm related damage. | | | | | | |
| Totals: Rear Elevation | | | 0.00 | 0.00 | 0.00 | 0.00 |

### Left Elevation

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| No evidence of any storm related damage. | | | | | | |
| Totals: Left Elevation | | | 0.00 | 0.00 | 0.00 | 0.00 |

### Interior

Entry/Foyer                                                                    Height: 18'

| | | |
|---|---|---|
| 322.33 SF Walls | | 71.00 SF Ceiling |
| 393.33 SF Walls & Ceiling | | 71.00 SF Floor |
| 7.89 SY Flooring | | 23.83 LF Floor Perimeter |
| 23.83 LF Ceil. Perimeter | | |

| | | |
|---|---|---|
| Missing Wall | 11' 10" X 18' | Opens into Exterior |
| Window | 1' 6" X 6' 8" | Opens into Exterior |
| Window | 1' 6" X 6' 8" | Opens into Exterior |
| Window | 2' 6" X 6' 8" | Opens into Exterior |
| Window | 2' 6" X 6' 8" | Opens into Exterior |
| Window | 2' 6" X 6' 8" | Opens into Exterior |
| Window | 2' 6" X 6' 8" | Opens into Exterior |
| Window | 1' 6" X 6' 8" | Opens into Exterior |
| Window | 1' 6" X 6' 8" | Opens into Exterior |

JASON__ADAMS__RACHEL                                    11/7/2016          Page: 3

MetLife Auto and Home

Homeowner Operational Field Office
PO Box 6040
Scranton, PA. 18505 - 6040

| Subroom: Downstairs Entry (1) | | Height: 7' 8" |
|---|---|---|



| | 145.61 SF Walls | 88.16 SF Ceiling |
|---|---|---|
| | 233.78 SF Walls & Ceiling | 88.16 SF Floor |
| | 9.80 SY Flooring | 16.42 LF Floor Perimeter |
| | 36.75 LF Ceil. Perimeter | |

| Missing Wall | 7' 11·15/16" X 7' 8" | Opens into Exterior |
|---|---|---|
| Missing Wall | 2' 2" X 7' 8" | Opens into Exterior |
| Door | 2' 8" X 6' 8" | Opens into Exterior |
| Door | 2' X 6' 8" | Opens into Exterior |
| Door | 2' X 6' 8" | Opens into Exterior |
| Window - Goes to Floor | 1' 2" X 6' 11" | Opens into Exterior |
| Door | 6' X 6' 8" | Opens into Exterior |
| Window - Goes to Floor | 1' 2" X 6' 11" | Opens into Exterior |
| Door | 2' 8" X 6' 8" | Opens into Exterior |
| Missing Wall - Goes to Floor | 2' 8" X 6' 8" | Opens into Exterior |
| Missing Wall | 2' 2" X 7' 8" | Opens into Exterior |

| Subroom: Upstairs Entry (2) | | Height: 7' 8" |
|---|---|---|



| | 234.09 SF Walls | 125.78 SF Ceiling |
|---|---|---|
| | 359.87 SF Walls & Ceiling | 125.78 SF Floor |
| | 13.98 SY Flooring | 27.95 LF Floor Perimeter |
| | 47.78 LF Ceil. Perimeter | |

| Door | 2' 8" X 6' 8" | Opens into Exterior |
|---|---|---|
| Door | 2' 8" X 6' 8" | Opens into Exterior |
| Window - Goes to Floor | 1' 6" X 6' 8" | Opens into Exterior |
| Window - Goes to Floor | 2' 6" X 6' 8" | Opens into Exterior |
| Window - Goes to Floor | 2' 6" X 6' 8" | Opens into Exterior |
| Window - Goes to Floor | 1' 6" X 6' 8" | Opens into Exterior |
| Door | 2' X 6' 8" | Opens into Exterior |
| Door | 2' X 6' 8" | Opens into Exterior |
| Door | 2' 6" X 6' 8" | Opens into Exterior |
| Missing Wall | 8' 3" X 7' 8" | Opens into Exterior |
| Missing Wall | 8' X 7' 8" | Opens into Exterior |
| Missing Wall | 8' 3" X 7' 8" | Opens into Exterior |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 4. R&R Casing - 2 1/4" | 17.33 LF | 2.13 | 1.20 | 38.11 | (3.07) | 35.04 |
| 5. Seal & paint door or window opening – Large (per side) | 1.00 EA | 29.97 | 0.57 | 30.54 | (22.91) | 7.63 |

JASON__ADAMS__RACHEL                                        11/7/2016                Page: 4

**MetLife Auto and Home**

Homeowner Operational Field Office
P.O. Box 6040
Scranton, PA. 18505 - 6040

CONTINUED – Entry/Foyer

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 6. Seal & paint door or window opening (per side) | 1.00 EA | 23.73 | 0.34 | 24.07 | (18.06) | 6.01 |
| 7. Seal the surface area w/latex based stain blocker - one coat | 4.00 SF | 0.46 | 0.02 | 1.86 | (1.40) | 0.46 |
| Allows to seal stained drywall on wall. | | | | | | |
| 8. Paint the walls - one coat | 702.04 SF | 0.50 | 6.37 | 357.39 | (268.05) | 89.34 |
| 9. Mask the floor per square foot - plastic and tape - 4 mil | 284.94 SF | 0.19 | 1.18 | 55.32 | (0.00) | 55.32 |
| 10. Contents - move out then reset | 1.00 EA | 43.89 | 0.00 | 43.89 | (0.00) | 43.89 |
| Totals: Entry/Foyer | | | 9.68 | 551.18 | 313.49 | 237.69 |

Dining Room                                                        Height: 7' 8"

238.93 SF Walls                    187.00 SF Ceiling
425.93 SF Walls & Ceiling.        187.00 SF Floor
20.78 SY Flooring                 24.83 LF Floor Perimeter.
39.58 LF Ceil. Perimeter

| Missing Wall - Goes to Floor | 8' 2" X 7' 6" | Opens into Exterior |
| Missing Wall | 15' 7" X 7' 8" | Opens into Exterior |
| Window - Goes to Floor | 6' 7" X 6" | Opens into Exterior |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 11. Drywall Repair - Minimum Charge - Labor and Material | 1.00 EA | 308.37 | 1.05 | 309.42 | (0.00) | 309.42 |
| Allows for labor and material to repair damaged drywall. | | | | | | |
| 12. R&R Window trim set (casing & stop) | 37.17 LF | 3.98 | 3.34 | 151.27 | (13.53) | 137.74 |
| 13. Seal & paint door or window opening - Large (per side) | 1.00 EA | 29.97 | 0.57 | 30.54 | (22.91) | 7.63 |
| 14. Seal the surface area w/PVA primer - one coat | 4.00 SF | 0.44 | 0.02 | 1.78 | (1.34) | 0.44 |
| Allows to seal new drywall. | | | | | | |
| 15. Paint the walls - one coat | 238.93 SF | 0.50 | 2.17 | 121.64 | (91.23) | 30.41 |
| 16. Mask the floor per square foot - plastic and tape - 4 mil | 187.00 SF | 0.19 | 0.77 | 36.30 | (0.00) | 36.30 |
| 17. Contents - move out then reset | 1.00 EA | 43.89 | 0.00 | 43.89 | (0.00) | 43.89 |
| Totals: Dining Room | | | 7.92 | 694.84 | 129.01 | 565.83 |
| Total: Interior | | | 17.60 | 1,246.02 | 442.50 | 803.52 |

JASON__ADAMS__RACHEL                                    11/7/2016                    Page: 5

**MetLife Auto and Home**

Homeowner Operational Field Office
P.O. Box 6040
Scranton, PA. 18505 - 6040

### Debris Removal

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 18. Haul debris - per pickup truck load - including dump fees | 1.00 EA | 120.67 | 0.00 | 120.67 | (0.00) | 120.67 |
| Totals: Debris Removal | | | 0.00 | 120.67 | 0.00 | 120.67 |
| Total: Dwelling | | | 120.83 | 5,586.15 | 499.44 | 5,086.71 |
| Line Item Totals: JASON__ADAMS__RACHEL | | | 120.83 | 5,586.15 | 499.44 | 5,086.71 |

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 940.97 | SF Walls | 471.94 | SF Ceiling | 1,412.91 | SF Walls and Ceiling |
| 471.94 | SF Floor | 52.44 | SY Flooring | 93.03 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 147.95 | LF Ceil. Perimeter |
| | | | | | |
| 471.94 | Floor Area | 522.59 | Total Area | 940.97 | Interior Wall Area |
| 1,263.34 | Exterior Wall Area | 220.19 | Exterior Perimeter of Walls | | |
| | | | | | |
| 732.88 | Surface Area | 7.33 | Number of Squares | 388.13 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

**MetLife Auto and Home**

Homeowner Operational Field Office
PO Box 6040
Scranton, PA, 18505 - 6040

## Summary for Dwelling

| | | |
|---|---|---|
| Line Item Total | | 5,465.32 |
| Material Sales Tax | | 120.83 |
| Replacement Cost Value | | $5,586.15 |
| Less Depreciation | | (499.44) |
| Actual Cash Value | | $5,086.71 |
| Less Deductible | [Full Deductible = 7,078.00] | (5,086.71) |
| Net Claim | | $0.00 |
| Total Depreciation | | 499.44 |
| Less Residual Deductible | [Full Residual Deductible = 1,991.29] | (499.44) |
| Total Recoverable Depreciation | | 0.00 |
| Net Claim if Depreciation is Recovered | | $0.00 |

Brandon Kaker

JASON__ADAMS__RACHEL        11/7/2016        Page: 7

MetLife Auto and Home

Homeowner Operational Field Office
PO Box 6040
Scranton, PA. 18505 - 6040

## Recap of Taxes

| | Material Sales Tax (8.25%) | Manuf. Home Tax (5%) |
|---|---|---|
| Line Items | 120.83 | 0.00 |
| Total | 120.83 | 0.00 |

**MetLife Auto and Home**

Homeowner Operational Field Office
PO Box 6040
Scranton, PA. 18505 - 6040

### Recap by Room

Estimate: JASON__ADAMS__RACHEL

Area: Dwelling

Area: Roof

| | | |
|---|---|---|
| Metal Patio Roofing | 356.55 | 6.52% |
| | 3,759.68 | 68.79% |
| Area Subtotal:  Roof | 4,116.23 | 75.32% |

Area: Interior

| | | |
|---|---|---|
| Entry/Foyer | 541.50 | 9.91% |
| Dining Room | 686.92 | 12.57% |
| Area Subtotal:  Interior | 1,228.42 | 22.48% |
| Debris Removal | 120.67 | 2.21% |
| Area Subtotal:  Dwelling | 5,465.32 | 100.00% |
| Subtotal of Areas | 5,465.32 | 100.00% |
| Total | 5,465.32 | 100.00% |

**MetLife Auto and Home**

Homeowner Operational Field Office
PO Box 6040
Scranton, PA. 18505 – 6040

## Recap by Category with Depreciation

| Items | RCV | Deprec. | ACV |
|---|---|---|---|
| CONTENT MANIPULATION | 87.78 | | 87.78 |
| GENERAL DEMOLITION | 487.59 | | 487.59 |
| DRYWALL | 308.37 | | 308.37 |
| FINISH CARPENTRY / TRIMWORK | 161.41 | 16.15 | 145.26 |
| PAINTING | 647.43 | 418.33 | 229.10 |
| ROOFING | 3,772.74 | 55.31 | 3,717.43 |
| Subtotal | 5,465.32 | 489.79 | 4,975.53 |
| Material Sales Tax | 120.83 | 9.65 | 111.18 |
| Total | 5,586.15 | 499.44 | 5,086.71 |

This is not an authorization to repair. Authorization to repair must come from the Homeowner. An authorized MetLife Auto and Home representative must approve any supplemental charge or it will not be honored. This estimate must be presented to the repair contractor before authorizing repairs. Failure to do so may result in additional expenses to you.

You should be aware that your policy contains a condition requiring you to protect your property from further damage, make reasonable and necessary repairs to protect the property and keep a record of necessary expenditures.

Under this policy condition, it is your responsibility to take immediate, affirmative steps to prevent any growth or accumulation of mold on your property.

Should you fail to comply with this policy condition, we will not be able to provide coverage for any loss or damage, which results from the growth or accumulation of mold on your property due to your failure to take such immediate, affirmative steps.

By law, you must keep customer information we provide to you CONFIDENTIAL. You may use it only to perform insurance-related services/functions for us and/or our customer(s). You may not use, share, sell or otherwise disclose this information for other purposes or to anyone else without our prior consent. If you do not agree to these terms, you must return this information to us at once

Our number one goal is to ensure that you are completely satisfied with your claim experience. If you have any questions or concerns about your claim, please call us at 1-800-854-6011 and we would be happy to assist you.

We realize that you have a choice when selecting an insurance company and we thank you for choosing MetLife Auto & Home.

MetLife Auto and Home is a brand name of Metropolitan Property and Casualty Insurance Company and Affiliates, Warwick, RI.

Filed
10/24/2017 3:38 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Salena Jasso

CAUSE NO. 17-DCV-244634

| | | |
|---|---|---|
| RACHEL ADAMS, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 400TH JUDICIAL DISTRICT |
| METROPOLITAN LLOYDS INSURANCE | § | |
| COMPANY OF TEXAS AND | § | |
| BRANDON KAKER, | § | |
| | § | |
| Defendants. | § | FORT BEND COUNTY, TEXAS |

## DEFENDANT METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Metropolitan Lloyds Insurance Company of Texas, ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. GENERAL DENIAL

Defendant denies all and singular, each and every allegation contained in Plaintiff's Original Petition, and says that the same are not true in whole or in part, and demands strict proof thereof by a preponderance of the evidence.

### II. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiff for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article I, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiff is not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiff by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

**COVERAGE A - DWELLING**
1.   **Dwelling Owners.** If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
   A.   the dwelling owned by **you** on the **residence premises**; and
   B.   structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES**.

* * *

**COVERAGE B – PRIVATE STRUCTURES**
At the location of the **residence premises**:
1.   **we** cover private structures owned by **you** and separated from the dwelling by clear space; or

* * *

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

**We** do not cover private structures:
1.   used or held for any **business** or commercial farming purposes; or
2.   rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

* * *

**COVERAGE C - PERSONAL PROPERTY**
**Personal Property Covered**
**We** cover personal property owned or used by **you** while it is anywhere in the world.

* * *

## CAUSES OF PROPERTY LOSS

### SECTION I - LOSSES WE COVER
### (COMPREHENSIVE PERILS)

**LOSS DEDUCTIBLE CLAUSE**
**We** will pay only when a loss exceeds the deductible amount shown in the Declarations.
**We** will pay only that part of the loss over such stated deductible.

**COVERAGE A – DWELLING**
**COVERAGE B – PRIVATE STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION 1 – LOSSES WE DO NOT COVER.**

### SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold**. There is no coverage for loss which, in whole or in part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold**. This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation**.

* * *

2.    **Windstorm or Hail**
      **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

* * *

### SECTION I - LOSSES WE DO NOT COVER

* * *

1.   **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

* * *

D.   **Water damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:

    1.   flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;

    2.   water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or

    3.   water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

* * *

H.   **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

* * *

2.   **We** do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following:  (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

    A.     conduct, act, failure to act, or decision of any person, group, organization or governmental body;

    B.     defective, inadequate, faulty or unsound:

        1.     planning, zoning, development, surveying, siting;

        2.     design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        3.     materials used in repair, construction, renovation or remodeling; or

        4.     maintenance;

of any property whether on or off the residence **premises**. Property includes land, structures or improvements of any kind; and

    C.     weather conditions.

However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.     **We** do not cover loss or damage to the property described in Coverage A, Coverage B and Coverage C which results directly or indirectly from any of the following:

    A.     wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

\* \* \*

We do pay for any direct loss that follows items A. through H. to property described in Coverages A, B and C not otherwise excluded or excepted in this policy and then we pay for only the ensuing loss. If a covered water loss follows, we will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but we do not cover loss to the plumbing or appliance from which the water escaped.

\* \* \*

Pleading further, Defendant would also assert that Plaintiff has failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiff. Specifically, the subject insurance policy provides as follows:

SECTION I – CONDITIONS

\* \* \*

2.    **What you Must do After a Loss. We** have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us**:

    A.    Promptly notify **us** or **our** representative.

    B.    Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

    C.    Cooperate with us in the investigation of a claim.

* * *

    E.    At any reasonable time and place **we** designate, and as often as **we** reasonably require:
        1.    show **us** the damaged property;
        2.    submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

* * *

7.    **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us**.

**You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

Pleading further, Plaintiff failed to promptly repair the subject property and based upon information and belief, has not performed necessary repairs to the property.

## III. JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiff take nothing against Defendant, and that Defendant go henceforth without day, with its costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP

By:    Dennis D. Conder
       State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 24th day of October, 2017, a copy of the foregoing was delivered via certified mail, return receipt requested, to Plaintiff's counsel of record.

Dennis D. Conder

PAN/PLDG/595145.1/001466.17033