**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RACHEL ADAMS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:17-CV-3450 |
| | § | |
| METROPOLITAN LLOYDS | § | |
| INSURANCE COMPANY OF TEXAS | § | |
| and BRANDON KAKER, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This insurance case was removed from the 400th Judicial District Court, Fort Bend County, Texas. The matter is before the Court on Plaintiff Rachel Adam's ("Plaintiff") Motion to Remand (the "Motion") [Doc. # 5]. Defendants Metropolitan Lloyds Insurance Company of Texas ("Metropolitan") and Brandon Kaker ("Kaker" and, together with Metropolitan, "Defendants") filed a Response [Doc. # 8]. Plaintiff has not filed a reply, and the deadline to do so under the

Court's local rules has expired.[1]  After considering the parties' briefing, all matters

of record, and the applicable legal authorities, the Court **grants** Plaintiff's Motion.[2]

# I. <u>BACKGROUND</u>

Plaintiff, a citizen of the State of Texas, alleges she is the policyholder of a

homeowner's insurance policy ("Policy") issued by Metropolitan.[3]  Plaintiff

alleges in essence that, on or about May 29, 2016, as a result of "wind and/or hail,"

the property subject to the Policy incurred significant damage.[4]  Plaintiff alleges

she submitted a claim under the Policy, and that all named Defendants mishandled

the claim in various ways.  Plaintiff claims, *inter alia*, that Kaker performed an

"inadequate and outcome-oriented investigation," which has resulted in her not

receiving full payment for her claim under the Policy.[5]

Plaintiff filed suit in the 400th Judicial District Court, Fort Bend County,

Texas.  The Petition asserts only claims under Texas law.  Plaintiff alleges Kaker is

---

[1]    Plaintiff also has not moved for an extension of the deadline to submit a reply.

[2]    Defendants have also filed a Motion to Sever and Abate [Doc. # 7], to which
Plaintiff filed a Response [Doc. # 9], and Defendants replied [Doc. # 11].  Because
the Court grants the Motion and will remand this case back to 400th Judicial
District Court, Fort Bend County, Texas, Defendants' Motion to Sever and Abate
[Doc. # 7] is **denied as moot**.

[3]    Plaintiff's Original Petition (the "Petition") [Doc. # 1-1], at ECF 4.

[4]    *Id.*

[5]    *Id.* at ECF 12.

an individual adjuster in Texas.[6]

Defendants removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446.[7] There is no dispute that Plaintiff is a Texas citizen, that Metropolitan, an unincorporated association, is a citizen of Florida, Illinois, Rhode Island and Wisconsin, and that Kaker is a Texas citizens.[8] Defendants contend, nevertheless, that this Court has diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff improperly joined Kaker in this case.[9] Plaintiff responds that it has alleged viable claims under Texas state law against Kaker, and, accordingly, this Court lacks subject matter jurisdiction over this case because Kaker is a proper, non-diverse party. The Court concludes that Plaintiff has adequately alleged at least one viable claim against Kaker and thus lacks subject matter jurisdiction over this case, as explained hereafter.

## II. LEGAL STANDARD FOR REMOVAL

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S.251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

---

[6]     Petition [Doc. # 1-1], at ECF 4.

[7]     Notice of Removal [Doc. # 1], at ECF 1-2.

[8]     *Id.*, at ECF 2-3; Petition [Doc. # 1-1], at ECF 3-4.

[9]     Notice of Removal [Doc. # 1], at ECF 3-4.

375, 377 (1994)); *Hotze v. Burwell*, 784 F.3d. 984, 999 (5th Cir. 2015); *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Gunn*, 133 S. Ct. at 1064 (quoting *Kokkonen*, 511 U.S. at 377). Any state court civil action over which the federal courts would have original jurisdiction may be removed by the defendant to federal court. *See* 28 U.S.C. § 1441(a); *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 228 (5th Cir. 2013).

District courts have both federal question jurisdiction and diversity jurisdiction. Federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A district court also has diversity jurisdiction over "civil actions where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).[10] Diversity jurisdiction requires *complete* diversity—that is, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *See, e.g., Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016).

---

[10]     Plaintiff does not dispute that the amount in controversy requirement is met in this case. *Cf.* Petition [Doc. # 1-1], at ECF 16 ("Plaintiff seeks monetary relief, the maximum of which is over $100,000 but not more than $200,000.")

The removing party bears the burden of establishing both the existence of federal subject-matter jurisdiction and that removal is otherwise proper. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014).

## III. <u>DISCUSSION</u>

### A. **Improper Joinder Standards**

"A defendant is improperly joined if the moving party establishes that (1) the plaintiff *has* stated a claim against a diverse defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse." *Int'l Energy Ventures Mgmt.*, 818 F.3d at 199 (5th Cir. 2016) (emphasis in original) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d. 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992 (2005)); *Mumfrey v. CVS Pharm. Inc.*, 719 F.3d 392, 401 (5th Cir. 2013); *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009) (citing *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007)). The Fifth Circuit repeatedly has explained that a defendant seeking to defeat a motion to remand on the basis of improper joinder must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

The party asserting improper joinder bears a heavy burden of persuasion. *See, e.g.*, *Kling Realty*, 575 F.3d at 514. "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). "In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant." *Smallwood*, 385 F.3d. at 574. "Any contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999), *abrogated in part on other grounds by Smallwood*, 385 F.3d at 573); *accord B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).

To determine whether an in-state defendant has been improperly joined, the Court usually "conduct[s] a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573.[11] The

---

[11]     Throughout the Motion, Plaintiff refers to "Exhibit B," which is an estimate of the scope of repairs prepared by non-party HIR Construction regarding the damage to the property in issue in this case that was damaged. Exhibit B was neither attached to the Petition nor specifically referred to therein. Accordingly, it would only be proper for the Court to consider Exhibit B if it can "pierce the pleadings." As Plaintiff herself recognizes in the Motion, however, it only would only appropriate for a court to pierce pleadings in this context when a plaintiff takes advantage of pleading standards to assert a fundamentally misleading position. *See Smallwood*, 385 F.3d at 573-574 ("Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated
(continued…)

Fifth Circuit recently held that federal courts' determinations regarding improper joinder should be made on the basis of federal pleading standards, rather than state standards. *Int'l Energy Ventures,* 800 F.3d at 202. Accordingly, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are

---

(continued…)

or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."). That is not the circumstances here. Plaintiff cites no authority in support of its argument that a court may pierce the pleadings to allow a plaintiff to supplement its petition with extrinsic evidence. Exhibit B is dated November 2016, which is approximately one year before Plaintiff filed her Petition. To the extent Plaintiff relies on Exhibit B to demonstrate the adequacy of her pleadings, it was incumbent upon on her to attach it to the Petition or specifically refer to it therein. Having failed to do so, the Court's 12(b)(6)-type analysis must be limited to the Petition itself and the attachments thereto.

However, even if the Court could consider the contents of Exhibit B, the Court's conclusion regarding the Motion would remain the same. In short, Exhibit B shows a significantly higher estimate of damages to the property in issue than the estimate Kaker prepared. Accordingly, Exhibit B, if properly before the Court, would provide further factual support for Plaintiff's allegations that Kaker "vastly under-scoped the actual covered damages to the property" and failed to perform an adequate investigation.

true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Additionally, a plaintiff must demonstrate the plausibility of his claim with case-specific facts, not mere conclusions: "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* Thus, although the Court must accept as true all well-pleaded facts, it need not accept as true overt legal conclusions, or legal conclusions that have been "couched" as factual allegations. *See id.* ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").

### B. Analysis

Defendants assert that Kaker was improperly joined and his citizenship should be ignored because Plaintiff has not alleged facts sufficient to state a legally viable claim against him under Texas state law. With respect to Kaker, Plaintiff asserts causes of action for various violations of the Texas Insurance Code, TEX. INS. CODE § 541.001 *et seq.*[12] Under Texas law, adjusters may be held liable in

---

[12] For example, the Petition alleges that Kaker violated the following provisions of the Texas Insurance Code:

(continued…)

their individual capacities for violations of the Texas Insurance Code. *See* Tex.

Ins. Code § 541.002(2) (defining "person" to include "adjuster"); *see also Gasch*,

491 F.3d at 282 ("an insurer's employee who "engage[s] in the business of

insurance" is a "person" for purposes of Article 21.21[13] and thus may be held liable

individually for a violation of that article.") (quoting *Liberty Mutual Ins. Co. v.*

*Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex. 1998)).  Defendants argue,

however, that Plaintiff's factual allegations are "conclusory statements and naked

assertions" and that there "simply are no 'factual underpinnings' of misconduct to

---

(continued…)

(1)     TEX. INS. CODE § 541.060(a)(1) - misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

(2)     TEX. INS. CODE § 541.060(a)(2)(A) - failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

(3)     TEX. INS. CODE § 541.060(a)(3) - failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

(4)     TEX. INS. CODE § 541.060(a)(4) - failing within a reasonable time to (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder; and

(5)     TEX. INS. CODE § 541.060(a)(7) - refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

[13]     Article 21.21 was the predecessor of Section 541.060 of the Texas Insurance Code. *See* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), sec. 561.060, 2003 Tex. Gen. Laws 3611, 3662, 4138 (effective April 1, 2005).

support the generic claims" alleged against Kaker. *See* Response [Doc. # 8], at 7. In short, Defendants assert Plaintiff's Petition fails to state a plausible claim for relief against Kaker.

The Court conducts a Rule 12(b)(6)-type analysis. The Court is unpersuaded by Defendants' argument that the Petition's allegations are entirely generic or lacking in factual particulars. Plaintiff's allegations against Kaker meet federal pleading standards, as required by *International Energy Ventures* and *Twombly* under Rule 12(b)(6). In the Petition, and the estimate prepared by Kaker that is attached thereto as Exhibit A, Plaintiff describes Kaker's alleged wrongful conduct with some particularity.[14] For example, Plaintiff alleges that Kaker

---

[14]     *See* Petition [Doc. # 1-1], at ECF 11-2. Plaintiff alleges that:

> [Kaker] inspected Plaintiff's property on or about November 3, 2016. During the inspection, [Kaker] was tasked with the responsibility of conducting a thorough and reasonable investigation of Plaintiff's claim, including determining the cause of and then quantifying all of the damage done to Plaintiff's property. During the inspection, [Kaker] ignored covered damages to the Property and refused to address all of the damages caused by the loss. Specifically, [Kaker] ignored covered damages including but not limited to the main house roof, patio metal roof, exterior, soffit, fascia, dining room, living room, upper hallway, and garage. Subsequent to the inspection, [Kaker] prepared a repair estimate, completed on or about November 7, 2016, which vastly under-scoped the actual covered damages to the property, this demonstrating [Kaker] did not conduct a thorough investigation of the claim.
>
> . . . [Kaker] failed to properly inspect the property and the damages, failed to request information, failed to adequately investigate the claim, failed to respond to requests for information from the Plaintiff, failed to timely
>                                                          (continued…)

conducted an "inadequate and outcome-oriented investigation" because, despite having full access to the property and all relevant information, he nevertheless "ignored covered damages including but not limited to the main house roof, patio metal roof, exterior, soffit, fascia, dining room, living room, upper hallway, and garage." Plaintiff also alleges Kaker improperly refused to respond to Plaintiff's inquiries regarding her claim and that a report on the damage to her property was only completed in November 2016, over five months after the date the alleged property damage occurred.[15] Plaintiff's claims with respect to Kaker include specific facts pertaining to Kaker's alleged actions investigating the damage, preparing a report on which Metropolitan relied, and the harm to Plaintiff that flowed from the foregoing. *See generally Sargent v. Safeco Ins. Co. of Ind.,* Civil Action No. H–10–4252, 2011 WL 819492, at *4 (S.D. Tex. March 2, 2011) (granting motion to remand because plaintiff's petition contained "actionable

---

(continued…)
evaluate the claim, failed to timely and properly estimate the claim, and failed to timely and properly report to [Metropolitan] and make recommendations to [Metropolitan] to address all the covered damages.

The Plaintiff provided information regarding the loss and the claim to [Kaker]. The Plaintiff allowed [Kaker] full and complete access to the property. The Plaintiff provided sufficient information to [Kaker] to adjust and evaluate the loss. The Plaintiff made inquiries regarding the status of the loss and payment, but [Kaker] failed and refused to respond to the inquiries and failed to properly adjust the claim and the loss.

[15]     *Id.*

allegations specifically directed at [the adjuster]"). These and other factual allegations in the Petition are specific and independent of those asserted against Metropolitan, Kaker's co-defendant.

The Court at this stage "do[es] not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005) (citing *Dodson v. Spiliada Maritime Corporation*, 951 F.2d 40, 42-43 (5th Cir. 1992)). "[The] holistic approach to removal mandates that the existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray v. Beverly Enterprises–Mississippi, Inc.,* 390 F.3d 400, 412 (5th Cir. 2004); *see also Edwea, Inc. v. Allstate Ins. Co.*, No. H–102970, 2010 WL 5099607, at *2 (S.D. Tex. Dec. 8, 2010).

Defendants have not demonstrated "that there is no possibility of recovery by the plaintiff against [Kaker], an in-state defendant," or "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [Kaker, the] in-state defendant." *Smallwood*, 385 F.3d at 573. Specifically, Defendants have not established that there is no possibility of recovery based on Plaintiff's allegations against Kaker under § 541.060(a)(2)(A) of the Texas Insurance Code, *i.e.*, that he failed to attempt in good faith to effectuate a

prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear. *See, e.g., Mehar Holdings, LLC v. Evanston Ins. Co.*, No. 5:16-CV-491-DAE, 2016 WL 5957681, at *4 (W.D. Tex. Oct. 14, 2016) (granting motion to remand because plaintiff's allegations, including that adjuster "failed to inspect the property and the damages, failed to request information, failed to fully investigate claim," sufficiently pleaded a claim under section 541.060(a)(2)(A)); *Manziel v. Seneca Ins. Co.*, Civil Action No. 3:15-CV-03786-M, 2016 WL 3745686, at *3 (N.D. Tex. July 13, 2016) (granting motion to remand because plaintiff's allegations, including that adjuster retained an inadequate engineer to assess damage, and that adjuster falsely represented there was no damage to plaintiff's property, sufficiently pleaded a claim under section 541.060(a)(2)(A)); *Roach v. Vehicle*, No. 3:15-CV-3228-G, 2016 WL 795967, at *6 (N.D. Tex. Feb. 29, 2016) (granting motion to remand because plaintiff's allegations, including that adjuster "conduct[ed] a substandard inspection" and "fail[ed] to include many" relevant damages in his report, sufficiently pleaded a claim under section 541.060(a)(2)(A)); *see also Shade Tree Apartments, LLC v. Great Lakes Reins. (UK) PLC*, No. A-15-CA-843-SS, 2015 WL 8516595, at *4–5 (W.D. Tex. Dec. 11, 2015); *Linron Prop., Ltd. v. Wausau Underwriters Ins. Co.*, No. 3:15-CV-293, 2015 WL 3755071, at *5 (N.D. Tex. June 16, 2015).[16]

---

[16]     The *Roach* and *Shade Tree* courts applied the Texas pleading standard in
(continued…)

Though there is some disagreement regarding whether an individual adjuster

may be held liable under section 541.060(a)(2)(A) or other sections of the Texas

Insurance Code,[17] the Fifth Circuit has concluded that "Texas law clearly

---

(continued…)
conducting the improper joinder analysis. The *Linron* court also applied the Texas pleading standard, but, noting that the Texas Courts of Appeals have interpreted the state standard as "essentially calling for a Rule 12(b)(6)-type of analysis," relied on Rule 12(b)(6) case law in its analysis.

[17]  *Compare Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014) (reasoning that adjusters are not liable under §§ 541.060(a)(1), (a)(2) or (a)(7) because an adjuster "does not have settlement authority on behalf of [the insurance company]" and his or her "sole role is to assess the damage"); *One Way Investments,* 2014 WL 6991277, at *4–5 (N.D. Tex. Dec. 11, 2014) (same); *Montoya v. State Farm Mut. Auto. Ins. Co.*, Civil Case No. 16-00005 (RCL), 2016 WL 5942327, at *4 (W.D. Tex. Oct. 12, 2016) ("there is no liability under Section 541.060(a)(2) absent the authority to settle."); *Lopez United Prop. & Cas. Ins. Co.*, No. 3:16-cv-0089, 2016 WL 3671115, at *2 (S.D. Tex. July 11, 2016) (Hanks, J.) (concluding that §§ 541.060(a)(2)(A), 541.060(a)(3), and 541.060(a)(4) of the Texas Insurance Code were inapplicable to the facts of the case before it, and expressing doubt that adjusters can be liable under those and other sections of chapters 541 and 542 of the Texas Insurance Code) *with Roach,* 2016 WL 795967, at *5 (finding § 541.060(a)(2)(A) applies to individual adjusters because adjusters are primarily responsible for investigating and evaluating insurance claims and therefore "effectuate" settlements); *Shade Tree Apartments*, 2015 WL 8516595, at *6 (granting remand after "[co]nsidering the myriad other district court cases finding claims for violations of § 541.060(a)(2)(A) exist under circumstances similar to those alleged by Shade Tree … and considering the federalism concerns favoring remand"); *Linron Prop.*, 2015 WL 3755071, at *4 (surveying the recent disagreements regarding adjuster liability under § 541.060(a)(2)(a), and noting that "[t]he fact that the statute uses the word 'effectuate' rather than a word that conveys finality (e.g., finalize), suggests that its prohibition extends to all persons who play a role in bringing about a prompt, fair, and equitable settlement of a claim. … [I]nsurance adjusters unquestionably have the ability to affect or bring about the 'prompt, fair, and equitable settlement' of claims, because it is upon their investigation that the insurance company's settlement of a claim is generally based."); *Mehar Holdings, LLC*, 2016 WL

(continued…)

authorizes [the predecessor statute of the current Section 541.060 of the Texas Insurance Code, Article 21.21[18]] actions against insurance adjusters in their individual capacities" and that an adjuster "very well may be held individually liable for a violation of this section." *Gasch*, 491 F.3d at 282 (citing *Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482 (Tex. 1998)). "In the context of a motion to remand, th[e] split in authority regarding the scope of an insurance adjuster's liability under the Texas Insurance Code must be resolved in favor of remand because '[a]ny ambiguities are construed against removal and in favor of remand to state court.'" *Mehar Holdings, LLC*, 2016 WL 5957681, at *4 (quoting *Hood ex rel. Mississippi v. JO Morgan Chase & Co.*, 737 F.3d 78, 84 (5th Cir. 2013)).

Because the Court concludes that Plaintiff has pleaded sufficient facts in

---

(continued…)
5957681, at *4 (discussing disagreement among district courts regarding the applicability of § 541.060(a)(2)(A), and concluding that "given the federalism concerns present where a federal court is called upon to interpret a state law for the first time, this Court declines to usurp the authority of the Texas state courts"). *See also Richardson E. Baptist Church v. Phila. Indem. Ins. Co.*, 05-14-01491-CV, 2016 WL 1242480, at *10 (Tex. App.---Dallas, Mar. 30, 2016 (unpub.) (pet. for rev. filed July 18, 2016, 2016 WL 3950491, No.05-14-01491-CV) (affirming summary judgment for adjuster on claims that adjuster violated chapters 541 and 542 of the Texas Insurance Code because adjuster's alleged actions did not render him liable under chapter 541, and finding, as a matter of law, that chapter 542 applies only to insurers).

[18]     *See* note 13, *supra*.

support of a possible claim against adjuster Kaker, the Court need not consider whether there are sufficient facts to support any other claims against him.  *See Gray,* 390 F.3d at 412 ("[T]he existence of even a single valid cause of action against in-state [or non-diverse] defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court.").

## IV.    CONCLUSION AND ORDER

The presence of at least one potentially viable claim against non-diverse defendant Kaker deprives the Court of subject matter jurisdiction and remand of this case to Texas state court is required.  It is therefore

**ORDERED** that Plaintiff Rachel Adams's Motion to Remand [Doc. # 5] is **GRANTED**.  The Court will issue a separate Remand Order.  It is further

**ORDERED** that the Motion to Sever and Abate [Doc. # 7] is **DENIED AS MOOT**.

SIGNED at Houston, Texas, this  25<u>th</u>  day of **January, 2018**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

16